**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> v. <br><br> VINCENT J. OPALEWSKI, *et ano.*, <br><br> Defendants. | Crim. No.: 16-65 (JLL) <br><br> **OPINION** |

**LINARES**, Chief District Judge.

This matter comes before the Court by way of the Government's Motion *in limine* to Admit at Trial an Excel Spreadsheet Prepared by Defendant Brian C. Steppig. (ECF No. 49 ("Gov. Mov. Br.")). Defendants Vincent J. Opalewski and Brian C. Steppig have opposed the Government's Motion (ECF No. 56), to which the Government has replied. (ECF No. 60). The Court decides this matter after conducting oral argument on September 7, 2017. For the reasons set forth below, the Court grants in part and denies in part the Government's Motion.

## I. BACKGROUND

Defendants Vincent Opalewski and Brian Steppig each have been indicted on one count of violating Section 1 of the Sherman Antitrust Act. (*See generally* ECF No. 1 ("Indictment")). The Government alleges that beginning in approximately 1997, and ending no later than February 2011, Defendants, with others, "entered into and engaged in a combination and conspiracy to suppress and eliminate competition in the sale and marketing of liquid aluminum sulfate by agreeing to rig bids and allocate customers for, and to fix, stabilize, and maintain the price of liquid aluminum sulfate sold to municipalities and pulp and paper companies in the United States."

(Indictment ¶ 14). According to the Government, the conspiracy was carried out mainly by way of discussions between the various co-conspirators, including Defendant Steppig. (Gov. Mov. Br. at 2-3).

"In 2005, [co-conspirator and Government cooperator Alex] Avraamides left General [Chemical] for GEO and became [Defendant] Steppig's supervisor. According to the Government, Defendant Steppig maintained an Excel Spreadsheet called "Competitive Issues" during the time period that Avraamides was Defendant Steppig's supervisor ("Steppig Log"). (Id. at 6-7). The Steppig Log purports to contain information regarding the conspiracy from other co-conspirators relayed to Defendant Steppig. (Id. at 7). The Government now seeks to introduce the following 11 entries at the time of trial: 1) one entry dated 11/22/05; 2) one entry dated 12/13/05; 3) two entries dated 12/19/05; 4) three entries dated 1/9/06; 5) two entries dated 2/14/06; 6) one entry dated 2/15/06; and 7) one entry dated 5/1/06. (Id. at 7-8). The Court analyzes the admissibility of each entry separately below.

## II.   ANALYSIS

In deciding this issue, the Court is faced with a two-fold analysis. First, the Court must determine whether the statements within the Steppig Log are non-testimonial such that admitting the Steppig Log at trial would not infringe upon Defendants' rights under the Confrontation Clause of the Sixth Amendment of the Constitution. Additionally, even if the Steppig Log is deemed non-testimonial, the Court must determine whether the log itself, as well as the statements contained therein, are admissible under the hearsay rules.

### A. Sixth Amendment Considerations

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."

2

U.S. Const. amend. XI. The Supreme Court of the United States has, on numerous occasions, revisited the application of the right to confrontation under the Confrontation Clause, including the seminal case of *Crawford v. Washington*, 541 U.S. 36 (2004). *Crawford* provided four examples of testimonial statements: 1) statements to law enforcement; 2) *ex parte* in-court testimony; 3) extrajudicial statements such as affidavits, depositions, and interrogatories; and 4) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 51-52.

Shortly thereafter, the Third Circuit sought to further define the meaning of testimonial in *United States v. Hendricks*, 395 F.3d 173 (3d Cir. 2005). That case involved the admissibility surreptitiously recorded conversations by law enforcement through Title III wiretaps. *Hendricks*, 395 F.3d at 181. The lower court found that the statements were testimonial, but the Third Circuit later reversed on the ground that the recordings did not fall into the specific examples set forth in *Crawford*. *Id.* The Court reasoned that "the very purpose of Title III intercepts is to capture conversations that the participants believe are not being heard by the authorities *and will not be available for use in a prosecution.*" *Id.* (emphasis added). Later in 2005, the Third Circuit further clarified that, unless "statements [are] made under circumstances which would lead *an objective witness to reasonably believes that the statement would be available for use at a later trial*," such statements are non-testimonial and may be admitted at a criminal trial without violating the Confrontation Clause. *United States v. Hinton*, 423 F.3d 355, 360 (3d Cir. 2005). Accordingly, it is clear that a person's statements may be admitted during a criminal trial, without violating the Confrontation Clause, if said statements were made without any forethought that the statements would be used at a later trial.

Here, the Court finds that the Steppig Log does not qualify as testimonial. Preliminarily, the parties agree that only the fourth example set forth in *Crawford* is relevant to this case. A review of the log indicates that Defendant Steppig was keeping track of various conversations that pertained to the day-to-day business, and, as the Government asserts, the charged conspiracy. Each of the statements contained in the Steppig Log all revolve around potential bids that GEO was going to either make, or "stay away" from, as to not compete with General Chemical. The log plainly appears to be just that, a log that Defendant Steppig was keeping in connection with GEO's business and the conspiracy.

Nowhere within the Steppig Log is there any indicia that Defendant Steppig was preparing this for a later trial. There are no statements contained therein where the Court could glean that Defendant Steppig was in fact preparing the Steppig Log for a later trial or criminal prosecution. Moreover, given the secrecy of the conspiracy, it is difficult to believe that this log was created for such a purpose. For example, Defendant Steppig noted on December 19, 2005 that co-conspirator Avraamides called General and that Avraamides "told them what price to bid for the Inland accounts" GEO had. On January 9, 2006, Defendant Steppig noted that Avraamides once again spoke with General and "told them to bid above $260/ton for Columbiana, AL in Shelby County in order for GEO to receive the alum award."

These statements were not prepared in anticipation of a later trial. There is no indication therein that Defendant Steppig anticipated being arrested and using the Steppig Log in an exculpatory manner. Rather, this case is more akin to the *Hendricks* case. The individuals being recorded made statements that they never believed the Government would ever hear. Here, Defendant Steppig was simply keeping track of the various conversations Avraamides was having

4

with other co-conspirators and did not believe that the Government would ever have access to the Steppig Log.

This conclusion is buttressed by two facts. First, is the fact that the Steppig Log exists during only the time period where Avraamides was Defendant Steppig's supervisor, rather than throughout the entire course of the alleged conspiracy. Thus, it is apparent that the Steppig Log existed for an abbreviated time at the end of 2005 and beginning of 2006. In other words, Defendant Steppig did not keep any sort of log for the first eight years, or the last five years, of the alleged conspiracy. Indeed, if Defendant Steppig was creating the Steppig Log for use at a later trial, the log would have been maintained for a longer period of time, which it was not. Moreover, none of the statements contained in the Steppig Log indicate that the log was being kept for use at a later trial. All the statements are mere recitations of conversations. This, alone, is insufficient to qualify the Steppig Log as testimonial. Accordingly, the Court finds that admission of the Steppig Log at trial would not run afoul of the Confrontation Clause.

### B. Hearsay

Rule 801(c) of the Federal Rules of Evidence defines "hearsay" as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Statements can be oral, written, or even nonverbal conduct so long as "the person intended [them to be] assertion[s]." Fed. R. Evid. 801(a). A declarant is the person who made the subject statement. *See* Fed. R. Evid. 801(b). Rule 802 generally prohibits the use of hearsay, unless an exclusion or exception applies to the subject statement thereby rendering it admissible. *See* Fed. R. Evid. 802.

Pursuant to Rule 801(d) of the Federal Rules of Evidence, certain statements are explicitly excluded from the hearsay prohibition. *See generally* Fed. R. Evid. 801(d). Rules 801(d)(2)(A) and 801(d)(2)(E) are salient to the analysis herein. Pursuant to Rule 801(d)(2)(A) a statement "offered against an opposing party" that "was made by the party in an individual ... capacity" is not hearsay and may be admitted at trial. Fed. R. Evid. 801(d)(2)(A). Additionally, a statement that "is offered against a party" that "was made by a party's coconspirator during and in furtherance of the conspiracy" is also exempt from the hearsay prohibition. For the following reasons, the Court finds that that 10 out of the 11 entries in the Steppig Log is not barred by the prohibition on hearsay.

Initially, the Court is satisfied that the statements written into the Steppig Log by Defendant Steppig himself are exempt from hearsay under Rule 801(d)(2)(A). This is because there is no doubt that Defedant Steppig is the author of each statement.[1] Further, the Government, who is Defendant Steppig's opponent in this action, seeks to introduce these statements against Defendant Steppig, and Defendant Steppig made these typewritten statements in an individual capacity. Accordingly, the statements typed into the Steppig Log by Defendant Steppig fall squarely within the exclusion set forth in Rule 801(d)(2)(A).

Moreover, the Court is satisfied, at this stage, that all the written statements contain statements of co-conspirators. At trial, the Government will be left to its proofs to show that, in fact, each statement contained within the Steppig Log was made by a co-conspirator. Additionally, there is no doubt the statements of Defendant Steppig's co-conspirators were made during the pendency of the alleged conspiracy. This is clear since the entries in the Steppig Log range from the end of 2005 through the beginning of 2006, while the alleged conspiracy started in 1997 and

---

[1] While the Court rejects Defendant Steppig's argument, Defendant Steppig did concede he was the author during oral argument on September 7, 2017 when he asserted that the Steppig Log was created to protect himself at a later date.

ended no later than February 2011. Finally, for the statements in the Steppig Log to be admissible, the Court must ascertain whether said statements were made in furtherance of the alleged conspiracy. The Court analyzes each entry separately herein.[2]

| 11/22/05 | Alex | Alex had a phone call with Rich Fedison who stated they increased Georgia-Pacific by about $27/ton. |

The Court concludes this entry is admissible because it was made in furtherance of the conspiracy. According to the Steppig Log, Avraamides made the above statement regarding a conversation he had with another co-conspirator, Rich Fedison, regarding an upcoming bid where the price was supposedly being artificially increased by $27 per ton. This is the exact conduct that the Indictment claims was improper and relates to the conspiracy. Hence, this entry is admissible, so long as the Government can lay the requisite foundation when it seeks to introduce same at trial.

| 12/13/05 | Alex | Alex called Rich Fedison and asked pricing for Potlatch-McGehee, AR. Came to me and told me to bid $198.73 so that we would not take General's business. |

This entry is also admissible for the same reasons espoused directly above. Once again, the entry describes information relayed by Avraamides and relates to a conversation Avraamides had with Fedison. The entry also relates to a specific bid and explicitly refers to how the bid will be placed to assure General Chemical does not lose its business. This entry contains statements by co-conspirators in furtherance of the alleged conspiracy and is admissible, presuming the Government can lay the proper foundation for same.

| 12/19/05 | Alex | General called Alex and they wanted to know which Inland accounts GEO had so they would not bid against us. |

---

[2] The Court notes that the following excerpts from the Steppig Log contain three distinct cells. The first cell, which is furthest to the left, is the date of the entry. The right cell, which is furthest to the right, contains the subject statement. The middle cell indicates who made the statement that is contained in the right cell.

7

This is the first of two December 19, 2005 entries the Government seeks to admit at trial. Once again, the Court is satisfied that same does not violate the prohibition on hearsay. This is because the entry contains a statement by Avraamides regarding his conversation with General Chemical. Therein, General Chemical spoke with Avraamides about certain Alum accounts GEO had to assure General Chemical did not bid against GEO. Hence, the statement was made in furtherance of the conspiracy by a co-conspirator and is admissible at trial, so long as the appropriate foundation is laid.

| | | |
|---|---|---|
| | Alex | Alex talked with General and told them what price to bid for the Inland accounts we have. |

This is the second entry from December 19, 2005 that the Government seeks to introduce at trial.[3] Again, this entry is permissible under the hearsay rules. As with the above entry, this entry involves a conversation between Avraamides, of GEO, and General Chemical, his former employer. Additionally, the entry describes Avraadmides' response to General Chemcal's inquiry directly above and explicitly relates to a bid. Hence, just as with the above entry, this entry is admissible as a statement by a co-conspirator in furtherance of the conspiracy. As such, the Court will permit the Government to use said statement so long as it lays the necessary foundation.

| | | |
|---|---|---|
| 1/9/06 | Alex | Alex talked with General and they said their bids were due today for Inland. |

The above is the first of three entries dated January 9, 2006 that the Government seeks to admit at trial. The Court finds that said entry is admissible. The statement in this entry is between

---

[3] The Court recognizes that the entry is undated, but notes that it is sequential to the prior December 19, 2005 entry and is responsive to same. Moreover, there has been no argument that the undated entry did not occur on December 19, 2005. Thus, for purposes of this motion, the Court accepts that the Government's representations that entry was made on December 19, 2005.

co-conspirators, mainly Avraamides and General Chemical, and is in furtherance of the alleged conspiracy since it relates to coordinating the bids for the "Inland" account. So long as it establishes the proper foundation, the Government may use this entry at trial.

| 1/9/06 | Alex | Alex mentioned that Mike Howsell now works for General in the marketing position and he is better friends with him than he was with Rich Federson. We will have no problems from now on |

This is the second entry from January 9, 2006, which the Court also finds admissible. Here, Defendant Steppig noted that co-conspirator Avraamides had information regarding co-conspirator General Chemical. Avraamides expressed that he has a better relationship with "Mike Howsell" at General Chemical and that this somehow will assure "no problems from now on." As the Government correctly notes, the "in furtherance" prong can be met if the subject statement was providing reassurance that the conspiracy remains in tact. *See United States v. Ammar*, 714 F.2d 238, 252 (3d Cir. 1983). Accordingly, the Government may introduce this entry as long as it is accompanied with the requisite foundation.

| 1/9/06 | Alex | Alex talked with General and told them to bid above $260/ton for Columbiana, AL in Shelby County in order for GEO to receive the alum award |

The final entry from January 9, 2006 is also admissible under the hearsay rules. Here, once again, Avraamides is discussing a bid with co-conspirator, and purported competitor, General Chemical. This entry is in furtherance of the conspiracy since Avraamides is telling General Chemical how much to bid for the Columbiana, AL account to assure GEO received the contract. Hence, presuming the Government can lay the proper foundation, this entry is admissible at trial.

| 2/14/06 | Alex | Discussed the draft of the Inland contract with Alex. He wants to have a $3-6 adder to each year's price increase since there is a gap between what GEO offered and what General offered to Bogalusa, Orange and Rome. Alex opened his files and said that General offered $178, $181 and $176/ton respectively |

9

This is the first of two February 14, 2006 entries the Government seeks to admit at trial. The Court finds that this entry is admissible. Here, Avraamides is once against discussing the "Inland" account. The statements contained in this entry were indeed in furtherance of the conspiracy. It contains statements by Avraamides on how he wants to bid on the "Inland" account so that GEO's pricing is similar to its supposed competitor, General Chemical. Specifically, Defendant Steppig notes Avraamides' desire to increase the annual bid prices because there is a gap between what GEO was bidding and what General Chemical was bidding on three different accounts. This entry also notes exactly what General Chemical was bidding on said accounts. Thus, with the proper foundation, this entry does not violate the prohibition on hearsay and may be used at trial.

| 2/14/06 | Alex | Alex received an e-amil and is to meet for lunch with upper management (Vince) at General on Friday, February 17. |

The second entry from February 14, 2006 is not admissible. Therein, Defendant Steppig memorializes the fact that co-conspirator Avraamides had received an email from "upper management" at General Chemical to set up a lunch meeting. The Court is not satisfied that there is sufficient information to support that this entry was in furtherance of the conspiracy. All that is contained therein is a statement from Avraamides to Defendant Steppig that Avraamides is going to meet with "upper management" from General Chemical. There is no discussion of bids nor is there any information therein that tends to show the purpose of the meeting. The simple fact that "Vince" works for General Chemical does not necessarily lead to the conclusion that the meeting was in furtherance of the conspiracy. Therefore, the Court finds that this entry in not admissible as there is no indication that the statement was made by Avraadmides in furtherance of the charged conspiracy.

| 2/15/06 | Alex | Alex called Mike Howsell and talked about IP pricing. Alex said "You know my pricing so what are you going to quote?" |

Mike told him they would submit price increases around $37-39/ton. Alex told him to remain firm on this since

we had submitted price increases of $40/ton across the board. He wanted these increases to go through.

The Court finds that the February 15, 2006 entry is admissible. This entry contains a conversation between co-conspirator Avraamides and alleged co-conspirator Howsell regarding a specific manner of pricing for Alum. The entry recounts a conversation between Avraamides and Howsell where they allegedly discussed said pricing, which is impermissible in the Alum market. It further explains Avraamides' desire to increase the prices. Hence, the Court is satisfied that these statements were clearly made in furtherance of the conspiracy and are therefore admissible under the hearsay rules, so long as proper foundation is laid.

| 5/1/06 | Alex | Alex called Mike Howsell on his cell phone and stated that MeadWestvaco wanted us to bid on Mahrt, AL. He |

said we were going to bid $166.60/ton and wanted to know if this would create a problem

for General. Mike mentioned that they had bid $158/ton and this should be no problem. He also stated that they had raised their prices to MeadWestvaco by $33-43/ton. Alex

mentioned that we had raised our prices up to $60/ton and that we were to meet with MeadWestvaco on May 23rd at 1:30 pm to discuss our proposal. Mike said they were to meet with them on the

em on the same day at 2:30 pm. Alex laughed and said that maybe GEO and General should go together.

After this, Alex mentioned he noticed General has taken a 200 ton GEO account in Carthage, TX. He said

that GEO would take a 200 ton account of General's and that they should not be upset. This was just making the playing field even again.

The final entry the Government seeks to admit at trial is dated May 1, 2006. The Court concludes that the entry is admissible as it was made in furtherance of the charged conspiracy.

11

Therein, Defendant Steppig notes that Avraamides, once again, called Howsell to discuss various bids. The entry is full of information that relates to how GEO and General Chemical will bid on a specific account. Additionally, the entry even contains discussions that appear to be some sort of agreement that GEO will take a General Chemical account since General Chemical took one of GEO's accounts. Hence, the Court finds that the statements in this entry were made in furtherance of the alleged conspiracy and, so long as the Government can lay the proper foundation, is admissible under the hearsay rules.

### III. CONCLUSION

For the reasons above, the Court grants in part and denies in part the Government's Motion *in limine* to admit the Steppig Log during trial. An appropriate Order accompanies this Opinion.

DATED: September 21, 2017

JOSE L. LINARES
Chief Judge, United States District Court